UNITED STATES DISTRICT COURT <u>FOR ONLINE PUBLICATION ONLY</u>
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
EZZAT DAIF,

                      Plaintiff,                          MEMORANDUM
                                                        <u>AND ORDER</u>
                                                        07-CV-5400 (JG)

         -against-

MICHAEL J. ASTRUE,

                      Defendant.
-------------------------------------------------------------x
A P P E A R A N C E S :

        HAROLD SKOVRONSKY
                1810 Avenue N
                Brooklyn, NY 11230
                Attorney for Plaintiff

        BENTON J. CAMPBELL
                United States Attorney
                Eastern District of New York
                271 Cadman Plaza East
                Brooklyn, NY 11201
        By:    Susan L. Riley
                Attorney for Defendant

JOHN GLEESON, United States District Judge:

        Ezzat Daif brings this action under 42 U.S.C. § 405(g), seeking review of the

Commissioner's decision terminating his eligibility for supplemental security income ("SSI")

under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-1383f. The parties cross-move

for judgment on the pleadings. For the following reasons, the Commissioner's motion is denied,

and Daif's cross-motion is granted to the extent that the case is remanded for a new hearing.

BACKGROUND

A.      *Procedural History*

On February 7, 2001, Daif was found disabled based on a back injury and chronic heart disease.  R. at 94.[1]  In September of 2004, the Social Security Administration ("SSA") advised Daif that it was reviewing his case, and on September 7, 2005, the SSA notified him that he was no longer disabled as of May of 2005.  *Id.* at 26-27.  Daif appealed this determination, and a disability hearing officer found that he was not entitled to benefits due to "fraud/similar fault."  *Id.* at 34.  At Daif's request, Administrative Law Judge ("ALJ") Jane Polisar held a hearing on April 24, 2007.  *Id.* at 309-52.  The ALJ found, in a written decision issued on September 24, 2007, that Daif had been free from disability since May 18, 2005.  *Id.* at 12-20.  The Appeals Council denied Daif's request for review on November 21, 2007, making the ALJ's decision the final decision of the Commissioner of Social Security.  *Id.* at 4-6.

B.      *Testimonial Evidence*[2]

Daif was born in Egypt in 1954 and came to the United States in 1975.  R. 22-23, 316.  He has a sixth-grade education completed in Egypt, and can understand English but not read or write it.  *Id.* at 316, 325-26.  Daif used to work as a merchant mariner and construction worker, but quit due to a back injury and unstable angina. *Id.* at 82, 321.  Daif claims that he cannot bend or lift.  *Id.* at 87.

Daif claims that his daily routine consists of waking and sleeping, and that he largely stays at home and watches movies on television but sometimes takes walks in a park.  *Id.*

---

[1]      The file regarding this decision was lost.  R. 12.
[2]      The facts in this section are drawn from several SSA forms Daif completed and Daif's testimony at his April 24, 2007 hearing.

at 109, 113, 337.  He has a roommate and a girlfriend who helps him with food shopping, cooking and cleaning, but he takes care of his personal needs.

At his hearing, Daif was asked about a videotape which allegedly showed him working.  This videotape, discussed in Section D, below, was made in connection with an investigation by the SSA's Office of the Inspector General ("OIG").  Daif stated that on the day he was videotaped, he was assisting a friend who had asked for his help.  *Id.* at 332.  Daif said that this exertion made him feel sick and unable to breathe, causing him to stop working after two hours.  *Id.* at 333.  Daif also said that other than the day on which he was videotaped, he never worked for a day or even part of a day while receiving SSI payments.  *Id.* at 332.

C.      *Medical Evidence*

On February 15, 2001, shortly after he was found disabled (apparently due to a fall at work in 1997, R. 166), Daif was hospitalized at Maimonides Medical Center for a heart attack.  *Id.* at 280-82.  By July of 2001, Daif said that he did not suffer from shortness of breath or chest pain, and that he was smoking and not taking his medication.  *Id.* at 222.  Daif was hospitalized in December of 2001 and had two stents placed in his right coronary artery.  *Id.* at 253-69, 281.

Daif went to Victory Memorial Hospital for follow-up care, and by August of 2002 reported no complaints to his treating physician, Dr. Cherian Alexander.  On May 15, 2003, Daif reported lower back pain on his left side, but no chest pain.  *Id.* at 216.  On September 8, 2003, he again did not complain of chest pain.  *Id.* at 215.  Daif did not complain of back pain in visits on October 27, November 12, and November 17, 2003, or on March 2, 2004.  *Id.* at 208,

211-13. On August 2, 2005, Daif reported that his low back pain had improved, but no clinical signs were reported. *Id.* at 199.

On February 17, 2006, Dr. Alexander wrote a handwritten letter addressed "To whom it may concern," in which he stated that Daif had a history of coronary artery disease for which he had a stent installed, and that Daif had lower back pain and disc degeneration since a fall several years before, rendering him "completely disabled unable to work [sic]." *Id.* at 304. However, on June 26, 2007, Daif's counsel wrote a letter to the ALJ, reporting that Dr. Alexander recently stated that he was only treating Daif's cardiovascular disease, which was "not seriously disabling" at the time, and not Daif's spinal disease. *Id.* at 308.

On August 18, 2005, Dr. Howard Finger performed a consultative examination. *Id.* at 283-86. In addition to hypertension, high cholesterol and coronary artery disease, Daif reported chronic back and neck pain dating back to 1997, including pain radiating into his left leg, causing numbness and weakness. *Id.* at 283. Daif reported having difficulty standing, walking, bending, lifting, and carrying, saying that he engaged only in light to sedentary activities and had not worked for seven or eight years. *Id.* at 284. He also complained of chest pains with shortness of breath. *Id.* at 283-84.

Dr. Finger examined Daif and found diminished breath sounds, as well as an inability to flex forward more than 30 degrees due to lower back pain; left back spasms; stiffness and tenderness of the neck; difficulty sitting up and getting on and off the examination table; inability to stand on tiptoes; a restricted range of motion in the left shoulder; great difficulty donning and removing shoes; difficulty lifting and carrying objects weighing seven or eight pounds in the left arm or making repetitive movements with the left shoulder; and diminished

reflexes. *Id.* at 284-85. An x-ray of Daif's lumbar spine did not reveal any abnormalities. *Id.* at 290.

Dr. Finger concluded that Daif had chronic neck and lower back derangement, hypertension, and high cholesterol. *Id.* at 286. He found Daif moderately limited in his ability to sit and markedly limited in his ability to stand, lift, carry, push, pull, climb stairs and perform physically demanding activities. *Id.* at 286. Dr. Finger observed that Daif had a slow and stiff gait and concluded that he was markedly limited in the distance he could walk. *Id.* at 285-86.

D.    *Surveillance*

The OIG, along with the New York State Cooperative Disability Investigations Unit, engaged in video surveillance on May 18, 2005 and August 18, 2005 in connection with a complaint that Daif was performing unreported construction work. The May 18, 2005 video records Daif engaging in activity similar to that of a construction worker at a house being renovated. Based on my review of the videotape, Daif is visible wearing gloves and a face mask, walking with a subtle limp, bending, lifting, and carrying and throwing scrap flooring and wall material. Along with one other worker, Daif moves two pieces of furniture and throws each over a railing. Along with two other workers, Daif moves one piece of furniture and throws it over the railing. It is difficult to discern the weight of the furniture based on the videotape. Daif is visible standing on tiptoes and stretching his arms up to pull down windows.

The investigators reported that Daif performed these activities for over two hours, and that he used a sledgehammer and crowbar to remove wall boards. They did not report observing Daif to be in pain or short of breath, or to experience difficulty walking, bending, carrying, lifting, or throwing. The videotape reveals Daif repeatedly pausing at a railing outside,

apparently resting, and does not reveal other workers doing so. At the hearing before the ALJ, Daif's counsel stated that the video records Daif pausing and gasping for breath several times, R. 314, though on my review, the tape did not make clear that he was gasping for breath.

On August 18, 2005, investigators observed Daif leaving the site of his consultative examination with Dr. Finger and walking into a train station without difficulty and without using a handrail. *Id.* at 21B. They reported that he did not exhibit any difficulty walking, standing, or sitting on the train, and did not appear to be in pain, tired, or short of breath. *Id.* My review of the videotape reveals that Daif walked with a subtle limp at a leisurely but essentially normal walking pace, and navigated stairs inside the subway station without using the handrail. Daif carried a plastic bag filled with bulky items in his left and right hand, though it was difficult to discern how much the bag weighed.

On February 12, 2007, a legal assistant at the SSA's hearing office called Daif's home, and spoke to a friend of Daif's, who stated that Daif was working and advised the assistant to call after 8:00 PM. *Id.* at 48.

E.      *The ALJ's Decision*

The ALJ upheld the determination to deny Daif benefits on the ground that Daif's condition had improved, and found it unnecessary to reach the question whether Daif had committed fraud or similar fault. R. 12. The ALJ followed the five-step sequential evaluation used to determine the *eligibility* of an applicant for SSI benefits, 20 C.F.R. § 416.920(a)(4)(i)-(v), not the seven-step sequential evaluation used to determine whether an SSI recipient should have benefits terminated, 20 C.F.R. § 416.994(b)(5)(i)-(vii). R. 13-14, 18. However, at times she made reference to the "medical improvement" standard set forth in § 416.994.

The ALJ found that Daif's back pain and heart disease were "severe" but did not meet or equal the severity of the conditions enumerated in the Listings of Impairments in Appendix 1 to Subpart P of Part 404 of the SSA's regulations, 20 C.F.R. pt. 404 subpt. P app. 1. The ALJ based her finding that Daif's heart condition did not meet or equal the severity of the listed impairments on Dr. Alexander's statement that his heart condition was not disabling and on the absence of medical evidence to the contrary. R. 16-17. She disregarded Dr. Alexander's statement that Daif was disabled, finding that it referred primarily to his spinal condition, which she did not treat. *Id.* at 16. The ALJ based her finding that Daif's spinal condition did not meet or equal the severity of the listed impairments on the absence of evidence of treatment for orthopedic complaints, and on the activity documented by the OIG's investigation.

The ALJ discredited Dr. Finger's assessment, finding it was inconsistent with the August 18, 2005 observations that Daif was able to walk unassisted with a normal gait and pace, and walk down stairs without using the handrail. *Id.* She also found that Dr. Finger's assessment of Daif's marked limitations in standing, walking, lifting and carrying was belied by the surveillance video showing Daif engaged in construction activity. *Id.* at 15. The ALJ appeared to credit Daif's counsel's claims that the work observed was not sustained exertion and that it rendered Daif exhausted and short of breath, and thus found Daif capable only of light exertion. *Id.*

The ALJ found Daif to have the residual functional capacity to perform a full range of light exertion. She found that he could not resume his past relevant work as a roofer. The ALJ deemed Daif to be a younger individual, *id.* at 19, and to have a limited education. Applying the Medical-Vocational Guidelines, 20 C.F.R. pt. 404 subpt. P app. 2, she found Daif

not to be disabled.  Finally, she concluded that he had not been under a disability since May 18,

2005, the date of the first video recording.

DISCUSSION

A.      *The Legal Standard*

Under 42 U.S.C. § 405(g), I review the Commissioner's decision to determine

whether it was "'supported by substantial evidence in the record as a whole or [was] based upon

an erroneous legal standard.'"  *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quoting

*Beauvoir v. Chater*, 104 F.3d 1432, 1433 (2d Cir. 1997)).   In deciding whether the

Commissioner's conclusions are supported by substantial evidence, a reviewing court must "first

satisfy [itself] that the claimant has had 'a full hearing under the Secretary's regulations and in

accordance with the beneficent purpose of the Act.'"  *Echevarria v. Sec'y of Health & Human

Servs.*, 685 F.2d 751, 755 (2d Cir. 1982) (quoting *Gold v. Sec'y of Health, Educ. & Welfare*, 463

F.2d 38, 43 (2d Cir. 1972)).

Under the Social Security Act, Daif is entitled to disability insurance benefits if he

is "unable to engage in any substantial gainful activity by reason of [a] medically determinable

physical or mental impairment which . . . has lasted or can be expected to last for a continuous

period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A).  The Commissioner decides

whether the claimant is disabled within the meaning of the Act.  20 C.F.R. § 416.927(e)(1).

The Commissioner may terminate a SSI recipient's benefits if a review reveals

substantial evidence that the recipient's condition has improved in a manner relevant to the

recipient's ability to work, and that the recipient can now engage in substantial gainful activity.

42 U.S.C. § 1382c(a)(4). Medical improvement is a "decrease in the medical severity" of the

recipient's impairments, and a finding of medical improvement "must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the recipient's] impairment(s)." 20 C.F.R. § 416.994(b)(1)(i).

In order to terminate SSI benefits, it is not enough that the Commissioner determine that the recipient can currently engage in substantial gainful activity; the Commissioner must also find that the recipient has experienced medical improvement. *See Veino v. Barnhart*, 312 F.3d 578, 587 (2d Cir. 2002) (rejecting SSA's claim that mere evidence of ability to work was sufficient to terminate disability insurance benefits without evidence of medical improvement); *see also Williams v. Barnhart*, No. 01-CV-353 (SAS), 2002 WL 618605, at *4 (S.D.N.Y. Apr. 18, 2002) (describing Commissioner's duty to prove medical improvement identically for both disability insurance benefits and SSI); *Hall v. Chater*, No. 94-CV-1401 (FB), 1996 WL 118544, *2-*3 (E.D.N.Y. March 8, 1996) (similar).

In assessing whether or not a medical improvement has occurred, the Commissioner must compare the current medical severity of the impairment with the medical severity of the impairment at the time of the most recent favorable medical decision finding the claimant was disabled. 20 C.F.R. § 416.994(b)(1)(vii). This most recent favorable medical decision is referred to as the "comparison point decision" or ("CPD").

The SSA's regulations prescribe a seven-step procedure to determine whether a SSI recipient has experienced medical improvement and can engage in substantial gainful activity. First, the Commissioner must determine whether the recipient has a condition that meets or equals the severity of a condition in the Listings of Impairments. § 416.994(b)(5)(i). Second, if not, then the Commissioner must determine whether the recipient has experienced

medical improvement. § 416.994(b)(5)(ii). If there has been medical improvement, the third step is to determine if it has increased the recipient's residual functional capacity. § 416.994(b)(5)(iii). The fourth step, performed if there has not been any medical improvement that resulted in an increased residual functional capacity, is to assess whether any special exceptions such as fraud render the recipient nonetheless ineligible or potentially ineligible for SSI. § 416.994(b)(5)(iv). The fifth step, performed if there has been medical improvement resulting in an increased residual functional capacity (or if certain of the special exceptions considered at the fourth step apply), is to determine if the recipient's impairments, singly or in combination, are "severe" in that they significantly limit the recipient's ability to do "basic work activities." § 416.994(b)(5)(v). If so, the analysis proceeds to the sixth step, where the Commissioner determines whether the recipient can perform work she has done in the past. § 416.994(b)(5)(vi). If not, the seventh step is to consider the recipient's residual functional capacity, age, education, and past work experience in order to determine whether she can perform other work. § 416.994(b)(5)(vii).

B.    *Daif's Claims*

    1.    *Incorrect Evaluation Procedure*

        The ALJ employed the incorrect evaluation procedure in assessing Daif's claims. As discussed above, the Commissioner's decision whether to terminate a recipient's SSI benefits is made using the seven-step procedure set forth at 20 C.F.R § 416.994(b)(5). Also as discussed above, the ALJ performed the five-step analysis applicable to decisions whether to extend benefits to a new applicant in the first instance. *See* R. 13-14 (citing and applying 20 C.F.R. § 416.920). The most significant difference between the two procedures is the correct procedure's

focus on medical improvement, and the ALJ did find that Daif had medically improved. However, the ALJ's failure to make this finding within the framework of the correct evaluation procedure constituted a violation of the SSA's regulations, and itself justifies a remand. *See, e.g.*, *Seltzer v. Comm'r of Soc. Sec.*, No. 07-CV-235 (CBA), 2007 WL 4561120, at *10 (E.D.N.Y. Dec. 18, 2007) ("'The failure to follow the procedure set forth in the regulations constitutes legal error and is grounds for a remand.'" (quoting *Rodriguez v. Barnhart*, No. 04-CV-949 (SHS), 2004 WL 2997876, at *8 (S.D.N.Y. Dec. 28, 2004))).

Additionally, the ALJ's discussion of Daif's medical improvement failed to perform the requisite comparison between Daif's current condition and his condition at the time of the comparison point decision. Indeed, the ALJ entirely failed to consider the records of Daif's condition prior to the time of the CPD.[3] As noted above, in order to terminate Daif's benefits, the ALJ must do more than establish that Daif can currently perform substantial gainful employment; she must also determine that he has experienced medical improvement since the time of his CPD. In order to do that, she must compare Daif's medical condition at the time of his CPD with his current medical condition, not merely note that he was previously determined to be disabled and find that his current medical condition permits him to work. *See Veino*, 312 F.3d at 587 (reversing the Commissioner's finding of medical improvement where the record before the court did not contain evidence of the disability insurance benefits recipient's prior medical condition, even though the ALJ found that the recipient could currently work).

---

[3]     The record contains several pages of various medical records dating from before Daif's CPD. R. 163-83. It is possible that the ALJ considered these records to be incomplete because the CPD file was misplaced, but the ALJ has a duty to expand the record as necessary to make the required findings. *See, e.g.*, *Batista v. Barnhart*, 326 F. Supp. 2d 345, 353 (E.D.N.Y. 2004) ("'Because a hearing on disability benefits is a non-adversarial proceeding, the ALJ has an affirmative obligation to develop the record.'" (quoting *Perez v. Chater*, 77 F.3d 41, 47 (2d Cir. 1996))). While the ALJ made efforts to gather additional records pertaining to Daif's treatment since the CPD, it is not clear that she attempted to procure additional medical records from the time of the CPD. R. 13.

2.      *The ALJ's Assessment of Dr. Finger's Report*

Daif challenges the ALJ's decision not to credit Dr. Finger's findings of marked limitation in several areas. The ALJ did have some good reason to challenge Dr. Finger's assessment. Dr. Finger was only a consulting physician and not Daif's treating physician, and thus his opinion was not entitled to controlling weight. *See, e.g.*, *Lopez v. Barnhart*, No. 05-CV-10635 (JSR), 2008 WL 1859563, at *12 (S.D.N.Y. Apr. 23, 2008) (noting that under the treating physician rule, "consulting physicians' opinions are entitled only to limited weight, while treating physicians' opinions are entitled to greater weight"); 20 C.F.R. § 416.927(d)(2) (noting that treating physician opinions are entitled to "controlling weight" when well-supported and not contradicted by substantial evidence); *see also Batista*, 326 F. Supp. 2d at 353 (noting the applicability of the treating physician rule in proceedings regarding the termination of SSI). More importantly, the two videotapes showing Daif performing physical activity, including lifting and carrying and standing on tiptoes, as well as navigating stairs unassisted on the day of his evaluation by Dr. Finger, directly undercut Dr. Finger's findings that Daif was unable to stand on tiptoes, and was markedly limited in his ability to lift, carry, push, pull, and climb stairs. R. 285-86; *see also* § 416.927(d)(6) (noting that the SSA, in evaluating how much weight to give a medical opinion, considers any factors "which tend to support or contradict the opinion"). Moreover, there was extremely little evidence of medical treatment for spinal injuries since Daif's CPD.

However, the ALJ mischaracterized Dr. Finger's report somewhat. The ALJ stated that Daif's ambulation without a cane contradicted Dr. Finger's claim that Daif used a cane. R. 16. However, Dr. Finger's report indicated that Daif was able to walk without a cane,

*id.* at 285, and only "uses a cane at times for support and balance," *id.* at 283. As remand is appropriate in any case, I need not decide whether this questionable characterization of Dr. Finger's report regarding his use of a cane renders the ALJ's decision to discredit Dr. Finger's findings unsupported by substantial evidence.

       3.      *The ALJ's Application of the Medical-Vocational Guidelines*

Daif also argues that the ALJ erred in applying the Medical-Vocational Guidelines to his case. It is undisputed that the ALJ erred in considering Daif a "younger individual," a term which applies to adults up to the age of 49, 20 C.F.R. pt. 404 subpt. P app. 2 § 200(h)(1), when Daif was 51 at the time the ALJ determined his disability ended. An individual between the ages of 50 and 54 is an "individual approaching advanced age." 20 C.F.R. pt. 404 subpt. P app. 2 § 200(g). Accordingly, the ALJ should not have used Guidelines rule 202.18, which applies to younger individuals.

Daif further claims that the ALJ's findings that Daif's past work was skilled or semi-skilled, and that Daif had limited education, were not supported by substantial evidence. The ALJ did not explicitly find that Daif's past work was skilled or semi-skilled, but her selection of rule 202.18 implies the finding "skilled or semi-skilled -- skills not transferable." The record is devoid of evidence that Daif was skilled or semi-skilled. Therefore, remand is justified on this basis as well. Even if Daif was skilled or semi-skilled, if his skills are "not readily transferable to a significant range or skilled or semi-skilled work" within his functional capacity, 20 C.F.R. pt. 404, subpt. P app. 2 § 202(c), his illiteracy in English would similarly require a finding of disabled. 20 C.F.R. pt. 404, subpt. P app. 2 § 202(d).

4.      *Scope of Remand*

Accordingly, remand is warranted.  However, the conclusion that Daif is disabled is hardly inescapable, and therefore it would be inappropriate to remand the case purely for the calculation of benefits.  *See, e.g.*, *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980) ("When there are gaps in the administrative record or the ALJ has applied an improper legal standard, we have, on numerous occasions, remanded to the Secretary for further development of the evidence.  On the other hand, we have reversed and ordered that benefits be paid when the record provides persuasive proof of disability and a remand for further evidentiary proceedings would serve no purpose."  (citations omitted)).

## CONCLUSION

Accordingly, the Commissioner's motion is denied and Daif's cross-motion is granted to the extent that the case is remanded to the Commissioner for further proceedings consistent with this decision.

So ordered.

John Gleeson, U.S.D.J.

Dated: July 1, 2008
        Brooklyn, New York